JACOB NEIMAN v. CHANNELLENE OIL & MANUFAC- TURING COMPANY.[1]

July 22, 1910.

Nos. 16,700—(185).

**Sale of adulterated cooking oil.**

The sale of adulterated or poisonous cooking oil by a wholesale dealer is prima facie evidence of negligence in failing to ascertain its true char- acter, although the package was properly labeled as cotton seed oil.

**Same — liability for retailer's loss of business.**

A manufacturer, or dealer, who sells adulterated or poisonous cooking oil to a retail merchant, is liable to the vendee for his consequent loss of busi- ness in selling the oil to his customers.

**Same — charge to jury.**

The court did not err in instructing the jury as to the degree of care required of the merchant to ascertain the quality of the oil before selling it to his customers, and the verdict is sustained by the evidence.

Action in the district court for Hennepin county to recover $5,000 damages to plaintiff's good name and reputation as a grocer, and in his business, because of the alleged manufacture and sale to him of five gallons of cooking oil, which he claimed to be impure and poisonous.  The answer admitted that plaintiff was engaged in a small way in the grocery business in the city of Minneapolis; but de- nied all other allegations of the complaint, and alleged that any dam- age to plaintiff's business was the result of his own negligence and

[1]Reported in 127 N. W. 394.

---

[Note]   Liability in tort of vendor for sale of unwholesome food, see note in 21 L.R.A. 139.

carelessness and violation of law and was not caused by appellant. The case was tried before Holt, J., and a jury which rendered a verdict in favor of plaintiff for $200. From an order denying its motion for judgment or for a new trial, defendant appealed. Affirmed.

*Thos. C. Daggett,* for appellant.

*Geo. Harold Smith* and *Francis B. Hart,* for respondent.

LEWIS, J.

Respondent conducted a small retail grocery and notion store in Minneapolis. Appellant was a wholesaler, or jobber, and this action was brought to recover damages alleged to have ensued to respondent's business by reason of the purchase by him from appellant of unwholesome and poisonous cooking oil, which was innocently sold by him to his customers. Respondent recovered a verdict of $200.

Appellant did not manufacture the oil, but claimed to have purchased it in Kansas City. Appellant's manager, a witness at the trial, testified that he made no examination of the oil to see that it was proper to sell for cooking purposes, but sold it as cotton seed oil on the strength of the label. The oil contained forty per cent. petroleum, and respondent sold it to several of his customers, who testified that they used it for cooking purposes, and that it made them sick, for which reason they immediately stopped trading with respondent.

During the course of the instructions, the court charged the jury that, if respondent had proven that the act of selling the oil by appellant was in violation of the pure food statute, the jury would be warranted in presuming that it was negligently done, and in reference to the conduct of respondent charged the jury as follows: "If you find that this plaintiff was negligent in not ascertaining the character of this oil, that if he had conducted himself as an ordinarily prudent person would under the same circumstances, and would have ascertained that this oil was dangerous, then, of course, he could not have sold the oil after that, after the time that he would have so ascertained its dangerous character if he had conducted himself as an ordinary prudent person would have done under the

circumstances. * * * If one person has been negligent, and such negligence has caused an injury to another, the person injured cannot recover, if he has also by his own negligence contributed to the injury." Appellant complains of this charge upon the ground that it lays down one rule of damages to govern the conduct of appellant and another to govern the conduct of respondent; that is, if it was prima facie negligence on the part of appellant to sell the oil because it was contrary to the statute, it was also prima facie evidence of negligence on the part of respondent to sell the oil.

Appellant made no request to charge, and did not ask for any correction of the charge as made. Conceding that the rule of law applicable to appellant was also applicable to respondent, the court did not necessarily commit error in failing to refer to the presumption of negligence with reference to respondent. The duty resting on respondent was substantially embraced in the statement by the court that if, by reason of his opportunity to examine the oil, respondent had cause to believe it was not a pure article of food, then he would be guilty of bringing about the result of which he complains, and could not recover. If a more definite instruction on this point was desired, it should have been requested.

Although the evidence as to the amount of damages is in some respects rather vague, yet seven or eight of respondent's customers came into court and definitely testified that they refused to deal with him after obtaining the oil in question, and figures were given of the amount of their business per week, which was consequently lost. No punitive damages were found by the jury, and we need not consider the court's charge on the subject of whether the evidence warranted such damages.

The evidence is sufficient to sustain the ruling that appellant was prima facie guilty of negligence in selling the oil. A company which advertises itself as a manufacturer and seller of pure articles of food must be deemed to have knowledge of the contents of the articles offered for sale.

Affirmed.