## McNitt v. Benner

*Douglas D. Storey* and *Paul S. Lehman*, for plaintiff.

*Harry L. Siegel* and *Robert Siegel*, for defendant.

UTTLEY, P. J., November 16, 1950.—This is an action of assumpsit brought by J. Stewart McNitt, plaintiff, for damages for personal injuries caused by the explosion of a glass bottle of "7 Up" a carbonated beverage, sold and delivered to him by C. T. Benner, defendant, and is based upon an implied warranty that the beverage and the bottle in which it was contained were fit for the purpose for which they were sold and were of mechantable quality.

Plaintiff in his complaint avers that for a number of years he has been and now is operating a combination service station and lunch room at Reedsville, Brown Township, Mifflin County, and that defendant, trading as Saxton Bottling Company and Lewistown Bottling Company, has been and now is engaged in the bottling and sale of a carbonated beverage known as "7 Up". Plaintiff's complaint further avers that defendant sold and delivered to plaintiff a case of 24 hermetically sealed bottles of "7 Up" which was stored in a protected part of his service station customarily

used for that purpose and not touched until July 4, 1948, when plaintiff, in transferring these bottles to a cooler picked up one of them for that purpose and it exploded in his hand causing the injuries described in his complaint.

Defendant has filed a preliminary objection to plaintiff's complaint, contending that: (1) The complaint fails to state any action at law in assumpsit; (2) the bottles containing the beverage were not sold to plaintiff, the legal title thereto remained in defendant and therefore there were no warranties between plaintiff and defendant as to the bottles; (3) even if it should be considered that there was a sale of bottles, the warranties, if any, implied under the common law and the Act of May 19, 1915, P. L. 543, 69 PS §124, do not apply to the bottles; (4) there are no warranties implied or existing under common law or the Act of May 19, 1915, P. L. 543, between a manufacturer and a dealer; (5) there was no breach of warranties implied by either the common law or section 15 of the Uniform Sales Act of May 19, 1915, and plaintiff has, therefore, failed to state any cause of action in assumpsit, and (6) the cause of action, if any, between plaintiff and defendant is in trespass and not in assumpsit.

It should be noted in the beginning that the sale of the bottle of "7 Up" in question was direct from the bottler or producer to the dealer, who was injured by the explosion of the bottle and has brought this action of assumpsit. The dealer here was the immediate purchaser who was injured.

It is well settled in Pennsylvania that there is at common law and under the Pennsylvania Sales Act of May 19, 1915, P. L. 543, sec. 15, 69 PS §124, an implied warranty in the sale of food or beverages that they are fit for human consumption and that if they prove to be unwholesome or poisonous resulting in the sickness of

or an injury to the buyer, the seller is liable either in tort or in assumpsit for the injury resulting.

The Supreme Court in Loch et ux. v. Confair et ux., 361 Pa. 158, 162, said,

"This court has recognized that a person who has effected the purchase of particular goods and sustains injury because of unfitness for an intended purpose may institute an action in assumpsit based upon a breach of implied warranty or an action in trespass based upon specific averments of negligence. In both instances the elements of damage may be identical, viz., the damage naturally and proximately resulting from a breach of implied warranty or a breach of duty; Bonenberger vs Pittsburgh Mercantile Co. 345 Pa. 559, 28 A.2d 913; Rozumailski vs Philadelphia Coca-Cola Bottling Co., 296 Pa. 114, 145 A. 700; See Jones et ux vs Boggs & Buhl Inc., 355 Pa. 242, 49 A.2d, 379."

The principle stated in the above case has been applied in Pennsylvania to foods and beverages in and out of containers in the following cases: LaGrotte v. Bottling Company et al., 70 D. & C. 145: trespass for damages to his business by owner of restaurant for mouse in bottle of root beer—verdict directed for plaintiff for six cents because no damage shown; new trial ordered; Nock v. Coca-Cola Bottling Works of Pittsburg, 102 Pa. Superior Ct. 515: assumpsit for damages for worm in Coca-Cola bottle—verdict $500; judgment affirmed; West v. Katsafanas, 107 Pa. Superior Ct. 118: assumpsit by customer, in restaurant, for damages for illness from contaminated sandwich—verdict for $537; judgment affirmed; Dillon v. William S. Scull Co., 164 Pa. Superior Ct. 365, trespass for injuries caused by explosion of vacuum packed coffee in a jar—verdict for $370; judgment affirmed; Rozumailski v. Phila. Coca-Cola Bottling Co., 296 Pa. 114: trespass for damages for personal injuries from broken

glass in Coca-Cola bottle—verdict for $3,000; judgment affirmed; Bonenberger v. Pittsburgh Mercantile Co., 345 Pa. 559: assumpsit for damages for personal injuries from oyster shell in can of oysters—verdict directed for defendant; on appeal reversed with a venire de novo.

As there was a sale in the case at bar we are of the opinion there can be no question that the beverage in the bottle which exploded and injured plaintiff was subject to the implied warranty that it was fit for human consumption and the purpose for which it was sold. The damage here, however resulted from the explosion of the bottle in which the beverage was contained, before any attempt was made to consume the beverage. The only question for our consideration therefore is whether this implied warranty applies to the bottle or container as well as the beverage contained therein. On this question we have as yet no definite ruling by the appellate courts of Pennsylvania. In Loch et ux. v. Confair et ux., supra, where the question was raised, the Supreme Court, at page 166, said:

"Having concluded that there was no executed sale or an executory contract of sale and hence no warranty, express or implied, there is no occasion to consider appellants' third contention that an implied warranty of fitness for human consumption arising from the sale of an article would extend to a bottle in which ginger ale is contained as well as the ginger ale itself."

In Coralnick v. Abbotts Dairies, 337 Pa. 345, another case mentioned in the briefs of both counsel, defendant's driver delivered a case of bottled milk, in a partitioned box, to plaintiff, a grocer, and while plaintiff was removing a bottle from the container to place it in his refrigerator, the bottle broke cutting his hand. The judgment on a directed verdict for defendant was affirmed on the ground that under the evidence the only reasonable inference that could be deduced was that

the accident was due to a latent unsuspected defect. The fact that in the case cited the container was a milk bottle which from common knowledge is covered with an easily removable paper cap and is not hermetically sealed nor charged as a bottled carbonated beverage and that the action was in trespass distinguishes it from the case at bar.

The only Pennsylvania case that has come to our attention, where this identical question has been directly raised and decided is Kuntz v. Pepsi-Cola Bottling Company et al., 89 Pitts. L. J. 558. The action in that case was in assumpsit for breach of an implied warranty where plaintiff, a storekeeper, was injured, when a bottle of Pepsi-Cola, bottled by defendant and purchased through a distributor, exploded in his hand as he was placing it in the refrigerator. Judge McDonald who wrote the opinion of the court, overruling defendant's motion for judgment n. o. v., distinguished the above case from Sweeney v. Blue Anchor Beverage Co., 325 Pa. 216, because in that case (1) the action was in trespass, with specific acts of negligence alleged which were not proven; (2) it was shown that there was an application of external force, and (3) there was a serious question about plaintiff's contributory negligence. The court in the case cited also distinguished it from Coralnick v. Abbotts Dairies, 337 Pa. 344, because in that case: (1) The action was in trespass; (2) the milk bottle was not sealed, and (3) there is no internal pressure in a bottle of milk. Judge McDonald then concluded on pages 564, 565 as follows:

"In the instant case, the only possible cause of the accident, in view of the jury's verdict, was either (1) an excessive internal pressure in a normal bottle, or (2) a normal pressure in a defective or weakened bottle. If the first was the cause of the accident, the defendant is, without doubt, legally liable. If the second

was the cause of the accident, the fact was more readily discernible by the defendant than by the plaintiff, and the burden should be upon defendant to prove that there was no breach by it of the implied warranty of fitness—especially when it is impossible for either plaintiff or defendant to trace the bottle from the defendant and back through the various users and handlers to any definite manufacturer. In such case, it seems to us that defendant must be held to the same degree of responsibility for defects or weaknesses in the bottle as though the bottle had been manufactured by defendant. . . .

"After having given this case that consideration, it is our conclusion that where suit is in assumpsit for breach of an implied warranty of fitness for the purpose for which the article sold was intended, and the article sold is an hermetically sealed bottle of carbonated beverage which is known to have an internal pressure at all times (which pressure will increase with an increase in temperature) and where it is a fact known to the producer of the beverage that its bottles do 'explode', and where a bottle does explode for no apparent or discernible reason, and where the bottle cannot be traced with any reasonable degree of certainty through other hands and users thereof and back to the manufacturer so as to establish who or what may have caused the bottle to weaken, the producer must be held responsible for both the bottle and its contents, to the extent, at least, of requiring the producer of the beverage to prove that there is no liability."

In the above case the court, in considering defendant's motion n. o. v. had before it all the evidence and the verdict of the jury. In passing upon defendant's preliminary objection here we have and can consider only plaintiff's complaint, all the material allegations of which must be taken to be true. After stating that

the purpose for which the bottles of "7 Up" were to be used was to be stored, handled and sold by plaintiff and his employes in his business and consumed by him, his employes and his customers, and describing the explosion of the bottle which injured him, the complaint alleges that the cause of the explosion was that the beverage and/or the bottle which contained it was not reasonably safe and fit for usage in connection with the handling, storage, sale and consumption of the bottled beverage and was not of merchantable quality, all of which was a breach of the warranties alleged. In passing upon defendant's preliminary objection, even if we did not agree with all the reasoning of Judge McDonald in the case cited we could not sustain defendant's objection. We do not know what plaintiff's evidence will be and cannot assume that he will be unable to prove that the internal pressure from the carbonated beverage caused the bottle to explode and such other facts as may be essential to raise an implied warranty of the bottle and its contents. While the opinion of Judge McDonald, in Kuntz v. Pepsi-Cola Bottling Company, above quoted, is that of a lower court, it impresses us as sound and we find ourselves in harmony therewith.

The complaint in this case alleges that the beverage to which the implied warranty applies, and the glass bottles in which it was contained, were sold and delivered by defendant to plaintiff. The allegation in defendant's preliminary objection that the purchaser was entitled to a credit or refund upon the return of the bottles, if relevant, is a matter of defense and there is nothing in the complaint from which it could be inferred. The beverage in question is scarcely known and rarely if ever sold except in bottles and it is a matter of common knowledge that it is almost always consumed directly from the bottle in which it is sold. The purchaser of a bottle of "7 Up" would therefore have

a right to rely on an implied warranty that the beverage was fit for human consumption and that the bottle in which it was contained and sold was a safe receptacle from which he could consume the beverage. The beverage and the container together therefore constitute the article sold and with the knowledge that the beverage is largely consumed from the container in which it is sold, we are of the opinion that in this case the container as well as the beverage is the subject of the implied warranty.

The English and many American cases, in jurisdictions other than Pennsylvania, have held that if the container is a part of the article purchased there is an implied warranty that extends to the container. 1 Williston, Sales, rev. ed. sec. 231, p. 592.

In Morelli v. Fitch & Gibbons, LR [1928] 2 K.B. 636, which was an action of assumpsit on an implied warranty of Stone's ginger wine, sold, by description, in a bottle, which exploded and injured the purchaser, it was held that the warranty applied to the container as well as the contents. The above English case was followed in Haller v. Rudmann et al., 292 N. Y. S. 586, where the Appellate Division of the Supreme Court of New York, Second Division, in reversing a nonsuit for breach of implied warranty to recover for injuries sustained in unscrewing a metal cap from a bottle of rubbing alcohol, held that the bottle was as much a part of the sale as its contents, and that where the defect was latent and inspection impossible unless the cap was removed the law casts the responsibility upon the seller, who may bring in the manufacturer if the latter were to blame.

The City Court of New York in Cooper et al. v. Newman et al., 11 N. Y. S. (2d) 319, where a bottle of siphoned bottled soda water exploded, followed the case last above recited and held that a siphoned bottle which explodes through no fault of the user after it is filled

with aerated water is unfit for the purpose for which it was made and is unmerchantable, that this is true whether or not the bottle was sold with the water or subject to a refund of deposit on return, and the fact remains that the container was an essential part of the transaction.

The New York cases cited above were followed by the Supreme Court of Ohio in Tennebaum v. Pendergast, 89 N. E. (2d) 490, in which it was held that where the thing purchased is a bottle of Royal Crown Cola, a soft drink or beverage, the consuming or drinking of which is of common knowledge ordinarily from the bottle itself, the purchaser's use of the bottle and the liquid therein contained are so closely associated and related that he cannot ordinarily consume the one without at the same time handling and using the other, and that the implied warranty in such case applies to the bottle as well as the contents thereof.

In an action by the owner of a package store, who was injured when a bottle of ale exploded in her hand, under a statute making the implied warranty, that the goods were of merchantable quality, a term of a contract of sale, the furnishing of a bottle so defective that it exploded without fault on the part of the purchaser constituted a breach of the warranty rendering the seller liable for the injuries caused by the explosion: Naumann v. Wehle Brewing Co., 127 Conn. 44, 15 A (2d) 181, 168 A. L. R. 1060.

For the reasons and under the authorities above set forth we are of the opinion that defendant's preliminary objection will have to be overruled.

### Decree

Now, November 16, 1950, after due consideration, the preliminary objection filed by defendant in the above case is hereby overruled.